Gwynne *v.* Memphis Appeal-Avalanche Co.

GWYNNE *v.* MEMPHIS APPEAL-AVALANCHE CO.

(*Jackson.* December 31, 1894.)

1. SUPERSEDEAS. *Of interlocutory decree of Chancery Court by Supreme Court.*

The interlocutory decree of a Chancery Court, rendered in a general creditor's proceeding before adjudication of the rights and priorities of creditors, directing sale of the insolvent debtor's property, consisting of a going daily newspaper plant and its appurtenances in the hands of and conducted by a receiver of the Court, will not be superseded by this Court, on application of the insolvent debtor based upon the ground that the decree will deprive him of his property without a hearing on the merits, where it appears that the debtor's assets are grossly insufficient to pay his debts, and rapidly depreciating in value, and in great peril of utter loss or destruction if sale should be delayed until final hearing.

Code construed: ₴ 4701 (M. & V.) ; ₴ 3933 (T. & S.).

Cases cited : Redmond *v.* Redmond, 9 Bax., 561 ; Blake *v.* Dodge, 8 Lea, 464 ; Railroad *v.* Huggins, 7 Cold., 217.

2. RECEIVER. *Of newspaper.*

While a Chancery Court has the power to appoint a receiver to manage and conduct the publication of a newspaper, it " will not take upon itself the responsibility of continuing the publication of a political paper by a receiver any longer than is absolutely necessary to prevent a sacrifice of the property."

Cases cited: 4 Paige, 480; 17 How. Pr., 510; 17 W. R., 425.

---

FROM SHELBY.

---

Appeal from Chancery Court of Shelby County. W. D. BEARD, Ch.

HOLMES CUMMINS, WM. H. CARROLL, W. A. PERCY,

CASEY YOUNG, MORGAN & MCFARLAND, and PERES & LEHMAN for Complainants.

METCALF & WALKER, GANTT & PATTERSON, and ADAMS & TRIMBLE for Memphis Appeal-Avalanche Co.

MCALISTER, J. This is a petition asking the Court to vacate or suspend an interlocutory decree of the Chancery Court of Shelby County, ordering a sale of the *Memphis Appeal-Avalanche* property pending proceedings in these consolidated cases. The decree complained of was passed on April 6, 1894, and recites that, because of the insolvency of the defendant, the Memphis Appeal Company, and because the business of conducting the newspaper, the *Memphis Appeal-Avalanche,* and its publication, has not been and is not self-supporting, and its receipts are insufficient to meet and defray the cost and expense incident thereto, and that the value of said newspaper property, and the security of the complainant creditors, has been and is being deteriorated under its conduct by this Court through its receiver, in that the necessary cost and expenses thereof exceed its income and earnings; that, for these several reasons, it is to the manifest interest of all the parties that said newspaper and property should be sold. The sale was advertised to take place Monday, June 4, but on Friday, June 1, last, the Chancellor ordered a postponement of the execution of the order of sale until Saturday, June 16. This order of sale was

made in pursuance of proceedings which originated in the following manner:

On June 7, 1892, the Memphis Appeal Company executed a deed of trust to the Memphis Trust Company to secure the payment of $200,000, in bonds of $1,000 each. This trust-deed was duly recorded, on July 27, 1892, in Shelby County, the home of the corporation. The bonds were issued thereunder, and are now owned by Mrs. Alice T. Collier and James B. Loving.

It further appears that, on September 20, 1893, more than a year thereafter, the Appeal Company executed a second mortgage, on a part of the same property embraced in the first trust-deed, to complainants, A. D. Gwynne and R. J. Morgan. Gwynne and Morgan, as such trustees, filed the original bill in this cause, and procured the appointment of W. J. Chase as receiver. Thereafter, Jacob Fink filed his bill, which the Court made a general creditors' bill. James P. Myrick also filed a bill, representing the employes of the Appeal Company. These causes were consolidated with the Gwynne and Morgan bill, and the complainants procured the appointment of said Chase as receiver in each of said causes.

It should be stated in this connection that S. C. Beckwith, one of the defendants to the original bill filed by the trustees, Gwynne and Morgan, attempted to remove said cause to the United States Circuit Court for the Western Division of the State. The petition was denied by the Chan-

cery Court of Shelby County. Thereupon, said
Beckwith filed a transcript of said cause in the
United States Circuit Court, which Court refused
to remand said cause to the State Court, and
hence the United States Court and the Chancery
Court of Shelby County have both assumed juris-
diction of said cause, and both Courts acting to-
gether have rendered similar orders of sale, and
have appointed their respective Clerks—E. B. Mc-
Henry and John B. Clough—special commissioners.
There is no collision between the State and United
States Courts, but they are acting concurrently and
harmoniously.

The Appeal Company answered the bill, deny-
ing that the trust-deed to Gwynne and Morgan
was lawfully executed. It denied that the debts
embraced in said trust-deed were the debts of the
corporation, excepting the sum of $14,475. It is
claimed in the answer that the president of said
corporation, the Memphis Appeal Company, was
never authorized by any board of directors or by
the stockholders to execute said alleged deed of
trust to Gwynne and Morgan; that the said al-
leged trust-deed to Gwynne and Morgan is without
and beyond the power of the said Memphis Ap-
peal Company corporation to execute under the
laws of the State of Tennessee, and is *ultra vires*
and void; that said trust-deed was executed for
the alleged purpose of securing the sum of $56,405,
when, in truth and in fact, nearly all of said sum
is made up of amounts claimed to be due the

beneficiaries from other persons than said Memphis
Appeal Company. It is not necessary, however,
to notice more specifically the issues of the con-
troversy, since those issues are not now reviewable.
The only question presented is whether the Chan-
cellor erred in his interlocutory order of sale.
The grounds upon which this Court is asked to
supersede the interlocutory order is that none of
the rights of the parties or priorities of the con-
flicting lien-holders have been settled by the Court.
It is insisted that the holders of the $200,000 in
bonds secured by the first trust-deed executed by
the Appeal Company to the Memphis Trust Com-
pany claim prior liens, and do not desire a sale
of the property; while, on the other hand, the
creditors secured by the Morgan and Gwynne trust-
deed also claim priority. The beneficiaries in both
of said trust-deeds claim priority, and their rights
have not been adjudicated. It is also insisted that
none of the general creditors in the Fink bill or
the employes in the Myrick bill have any kind of
lien, by attachment under the statute or otherwise,
on any of the property advertised to be sold;
that none of the rights of the parties or prior-
ities of the conflicting lien-holders have been set-
tled by the Court.

The question presented for the decision of the
Court is whether the interlocutory decree of sale
is, under the statute, a decree which deprives these
petitioners of property by interlocutory order, in
advance of a determination of the rights and in-

terests of the parties in such property. Section
4701 (M. & V. Code) provides, viz.: "The Supreme
Court in term, or either of the judges in vacation,
may grant writs of *supersedeas* to an interlocutory
order or decree," etc. This statute has been frequently construed by this Court. The *supersedeas*
provided for does not bring up to the Appellate
Court the cause, or any part of it, for immediate
revision. It will not operate as an appeal or writ
of error. *Blake* v. *Dodge,* 8 Lea, 464; 7 Cold., 217.
The object of the statute was to enable this
Court, or one of its judges, to stay the execution
of an order or decree of the Chancery Court which,
in advance of the final hearing, undertakes to deprive the litigant of money or property. *Redmond*
v. *Redmond,* 9 Bax., 561.

We are all of opinion that the decretal order
of sale in this case is not such a decree as comes
within the statute, and that this Court will not
by writ of *supersedeas* supervise the discretion conferred upon the Chancellor in respect to the preservation of property *pendente lite.* The order complained of does not deprive the Memphis Appeal
Company of its property in advance of the final
hearing, for the reason that its property was a trustfund, to be ratably distributed among its creditors.

The effect of the decree of the Court adjudging this company an insolvent corporation, was to
sequester its property, and it thereby became appropriated in equity to the creditors. Moreover,
the decree sought to be superseded simply executes

that clause of the trust-deed made by defendant, Memphis Appeal Company, to complainants, A. D. Gwynne and R. J. Morgan, empowering them to sell this newspaper after six months. The decree was rendered more than six months thereafter. Nor do we think that this decretal order deprived Mrs. Collier of her property. Her indebtedness is in nowise affected or prejudiced by converting the corporate assets into money. The proceeds of the sale will be impressed with the same liens as the property sold, and the priorities can be determined after as well as before the sale. We are of opinion, in view of the very precarious situation of this property, it was eminently proper that it should be sold before it might be entirely lost to the creditors. It appears that the corporation is hopelessly insolvent, and that the income, earnings, and profits of the newspaper are far less than the expenses incurred for its maintenance and operation. It appears that, since the execution of the trust-deed to Morgan and Gwynne, on September 20, 1893, it has cost more than $12,000 in excess of the earnings to run it. The report of the receiver shows that it has cost $1,000 above the earnings of the paper to run since April 6, 1894, when this order of sale was made.

The indebtedness of W. J. Chase, receiver, on current business, to and including May 31, 1894, was $5,991.54, of which amount $3,143.68 was an overdraft. It appears that, at one time, the banks refusing to make further advances on receiver's

39—9 p

certificates, and the income of the paper failing to pay current expenses, the receiver, Chase, reported the facts to the Court, and tendered his resignation. Two motions for a sale of the paper were made and overruled.

In the meantime, the deficit between income and expenses were steadily increasing, and the paper was kept up and issued upon the personal credit of the receiver. The Court finally accepted the resignation of Mr. Chase as receiver, and, at the instance of the defendants, appointed Mr. Hatchitt. Hatchitt made an examination of the books, and, being of opinion he could not improve on Chase's management, failed to qualify. The Court was thus constrained to refuse to accept the resignation of Mr. Chase, to which he excepted.

On the final motion for a sale, a large volume of testimony was taken, tending to show that the inevitable result of appointing a receiver for a newspaper lowered its prestige, decreased its value in every possible way, and that it was but a question of time when its entire value would be destroyed unless a sale was had. The Court seemed reluctant to order a sale over the objection of the company, and gave them ten days within which to name a receiver to succeed Chase, who would be able to keep the paper going. The company could not find a man to succeed Chase, it being perfectly apparent that the paper could not be kept going unless the receiver would advance his own money. The Court thereupon, on April 6, 1894, ordered a sale of the property. It appears

that the paper now stands in peril of sudden sus-
pension, and, should one issue fail to appear, it is
probable that the good will of the paper would
be entirely destroyed.

The fact appears that, on last Friday, June 1,
1894, the sale by order of the Chancellor and
United States Judge Hammond was postponed from
June 4 to June 16, and, in order to supply funds
to continue the publication of the paper up to June
16, the attorneys making the motion advanced to
the receiver the sum of seven hundred ($700) dol-
lars from their own means; otherwise, it is claimed,
the paper would have suspended.

It is obvious that this property is in a most
critical and perilous condition, and that this Court
ought not to interfere with the order of sale. It
is manifestly to the interest of all parties that the
order of sale should be executed. While the gen-
eral principle is settled, both in this country and
in England, that a receiver may be appointed to
manage and conduct the publication of a newspa-
per, we approve the language of Chancellor Wal-
worth "that a Court will not take upon itself
the responsibility of continuing the publication of
a political paper by a receiver any longer than is
absolutely necessary to prevent a sacrifice of the
property." *Martin* v. *Van Schaick*, 4 Paige, 480.
See also *Dayton* v. *Wilkes*, 17 How. Pr., 510; *Kelly*
v. *Hutton*, 17 W. R., 425; Beach on Receivers,
bottom page 227.

The *supersedeas* is refused, and the petition dis-
missed.